ODOM, Justice.
 

 This is a petitory action brought by the liquidators of Crawford, Jenkins & Booth, a Louisiana corporation. It is alleged that said corporation and they, as liquidators, are the lawful owners of the E. % of the S. W. %, section 30, township 21 north, range 10 west, in Webster parish. They set forth their title, which traces to them through an unbroken chain of transfers dating back to 1889. They allege that the defendants are in actual physical possession of- the land without any right or title and refuse to yield possession, although demand has been made.
 

 They pray for judgment recognizing them as the owners of the land and entitled to possession, and ordering defendants to vacate.
 

 Defendants answered, denying that plaintiffs had title, and set up title in themselves. They admitted that they were in possession of the land and that they had refused on demand to vacate.
 

 There was judgment in favor of plaintiffs, as prayed for, and defendants appealed.
 

 Plaintiffs filed in evidence certified copies of deeds forming their chain of title. The first is one from J. E. Hodges to Dennis Edwards, dated January 26, 1889, and recorded February 5, following. The land conveyed is the S. E. of the S. W. % and the S. W. % of the S. E. section 30, township 21 north, range 10 west. Only 40 acres of this land, the S. W. % of the S. E. of section 30, are involved in this, suit.
 

 The next deed is one from Dennis Edwards to J. L: Ambrose. This deed is dated December 31, 1897, and conveys the same land purchased from Hodges in 1889.
 

 The next deed is one from J. L. Ambrose to Lewis C. Biggs, dated March 6, 1905,-and recorded March 24, following. This deed conveys 160 acres of land, including the 5. E. % of the S. W. % and the S. W. i/4 of the S. E. % of section 30, which is the same land acquired by Ambrose from Dennis Edwards and by Edwards from J. E-Hodges, as shown by the above deeds. In addition to this land, Ambrose sold to Biggsthe N. E. % of the S. W. % and the N. W„ 14 of the S. E. 14 of section 30, same township and range. When or how Ambrose acquired the last-described two 40’s is not disclosed by the record.
 

 But the important fact is that, on March 6, 1905, Lewis C. Biggs acquired by record
 
 *369
 
 ed deed from J. L. Ambrose the S. E.
 
 y4
 
 of the S. W.
 
 y4
 
 and the N. E. *4 of the S. W.
 
 y4
 
 (E.
 
 y2
 
 of the S. W.
 
 y4),
 
 section 30, township 21 north, range 10 west, which is the land in controversy.
 

 There is ample testimony in the record to support plaintiffs’ contention that Lewis C. Biggs took corporeal possession of this land immediately following his purchase.
 

 This land — that is, the land in controversy — together with the other two 40’.s purchased by Biggs from Ambrose, was assessed to Lewis C. Biggs, the record owner, on the tax rolls of Webster parish for the year 1909. The entire tract was sold by the sheriff and ex officio tax collector of Webster parish to J. E. Biggs, on June 4, 1910, the sale being made for the taxes due by Lewis C. Biggs, the record owner of the property, for the year 1909. The sheriff executed a formal tax deed conveying the property to the purchaser, J. E. Biggs. The tax deed was filed and recorded on June 13, 1910. The deed recites that the taxes, interest, and costs amounted to $13.75. The description of the land conveyed is the same as that contained in the deed from J. L. Ambrose to Lewis C. Biggs.
 

 This tax deed is regular in form. It recites that the land was assessed to Lewis C. Biggs for the year 1909; that Biggs failed to pay the taxes for that year and that notice of delinquency was served on him in the manner prescribed by law; that, after legal delays, the property was advertised for sale for more than 30 days in a newspaper published in the parish of Webster; that the tax collector announced on the day of sale that the property would be sold to the person who would pay the taxes, interest, and costs for the least portion of the land; and that J. E. Biggs bid the amount of taxes, etc., for the entire tract, and that his bid was accepted.
 

 There is evidence in the record that J. E. Biggs, the tax purchaser, went into possession of the land following his purchase, and there is nothing to show that Lewis C. Biggs, the tax debtor, ever redeemed or offered to redeem the land. Although this tax deed has been of record for approximately 27 years, its validity has never been attacked by anyone.
 

 J. E. Biggs, the tax purchaser, sold the same land to William T. Crawford by notarial act dated June 22, 1912. The sale was made with full warranty of title, and Crawford’s deed was recorded on August 1, 1912.
 

 On October 21, 1936, the heirs of- William T. Crawford transferred the land to Crawford, Jenkins & Booth. This deed recites that, whereas the property was purchased by and in the name of their father, William T. Crawford, as a matter of fact it was purchased with funds belonging to the corporation and that the purchase was in fact made for the corporation.
 

 After plaintiffs filed their suit, S. G. Dreyfus Company intervened, claiming title to an undivided three-tenths interest in the said land. Intervener alleged that William T. Crawford purchased said land for the joint account of Crawford, Jenkins & Booth and intervener. In answer to the intervention, plaintiffs admitted all the allega
 
 *371
 
 tions made
 
 by
 
 intervener and prayed that judgment be rendered accordingly.
 

 As we have already stated, the defendants set up title to this land in themselves and, as evidence thereof, filed a certified copy of a deed from J. E. Hodges to R. L. Wills, dated February 25, 1897, and recorded March 24, following. This deed includes the E. % of the S. W. section 30, township 21 north, range 10 west, which is the land in controversy, and 200 acres not here involved.
 

 R. L. Wills, who purchased from Hodges, was the father of one of the defendants, who inherited his interest, and at the time of the purchase was the husband of the other, who claims a one-half interest by virtue of the community. Mrs. Wills, the widow, subsequently remarried and is now the wife of J. F. Adkins. .
 

 On checking the description in the deeds, we find that plaintiffs and defendants trace their titles to one 40 acres of the land, the S. E. of the S. W.
 
 %
 
 of section 30, back to the same author, J. E.' Hodges. Hodges sold that 40-acre tract to Dennis Edwards on January 26, 1889, and sold the same land to R. L. Wills on February 25,1897. Therefore plaintiffs’ record title to this 40-acre tract is older in date than defendants’. Just why Hodges sold the land to Wills eight years after he sold it to Edwards is not explained. According to the records, it is certain that Hodges had no title to the land when he sold to Wills and, having no title, could convey none.
 

 However, this, we think, is not material, because, as we have said, plaintiffs hold under a recorded tax deed, regular in form, dated and recorded in June, 1910, the validity of which has never been attacked. But counsel for defendants argue that the tax deed never ripened into perfect title because defendants, who were adverse claimants, were in possession. He cites Byrne v. Commercial Security Company, 7 La.App. 667; Bozeman et al. v. Crichton Company, Ltd., 16 La.App. 483, 134 So. 293; Bonvillain v. Richaud, 153 La. 431, at page 435, 96 So. 21.
 

 The law point raised by counsel with reference to the three-year prescriptive period relating to tax titles provided in article 233 of the Constitutions of 1898 and 1913 would be good and might 'defeat plaintiffs’ claim if, as a matter of fact, defendants had possession as they claim. But the testimony shows to our entire satisfaction that the defendants were not in possession of the land in 1910, when it was sold for taxes of 1909, and it is not claimed that the land was assessed to defendants for that year or that they paid the taxes. The testimony shows that Lewis C. Biggs, a record owner of the land in 1909 and 1910, was then in possession of it.
 

 These defendants are now in actual physical possession of the land. But they were out of possession in 1909 and 1910 and did not take possession until the year 1914. J. E. Wills, one of the defendants, testified that his father died in June, 1899. He was asked whether he and his mother 'were now in possession of the land and said that they were. • At page 95 of the record (page 49 of the testimony) he was .asked:
 

 
 *373
 
 “Q. What acts have you done toward possession of it? A. In the fall of 1914 I went there and built a two room house on it and had a well dug; a fellow by the name of Bill Sellars built this house.”
 

 J. F. Adkins, who married the widow Wills, first testified that he took possession of the land in the year 1913 by fencing and using it as a pasture, but did not say in what part of the year. He said that he built a house on it in 1914. He was asked whether J. E. Wills, his stepson, helped build the house, and he said he did. On cross-examination, counsel for plaintiff reminded him that Mr. Wills had said that the fence was built in 1914. The witness then said: “It was built in the spring of 1914.” Counsel then asked him:
 

 “Q. So that in 1913 you were not occupying the property and did not have possession of it? A. No, sir.”
 

 Thus, it clearly appears that defendants did not take possession until the year 1914, which was more than three years after the property was adjudicated to J. E. Biggs at tax sale.
 

 Now, as to defendants’ possession in and prior to 1910, the year in which the property was sold for taxes to J. E. Biggs, J. E. Wills testified that his father, R. L. Wills, who purchased part of it from Hodges in 1897, died in June, 1899, and said, at page 97 of the record (page 51 of the testimony) :
 

 “After my father’s death we run it awhile and could not get any rent and quit fooling with it after the fences burned away.”
 

 Mr. Wills was asked what possession of the land his mother maintained prior to 1914. On objection of counsel the witness was not permitted to answer the question because he had no personal knowledge of what his mother had done.
 

 Mrs. Adkins, the former Mrs. Wills, testified that her husband was farming the property through tenants when he died in 1899. She said that one of the tenants was a colored man named Edwards. (The testimony shows that this was the same Edwards who purchased land from Hodges in 1899.) She was asked whether she did not know that Dennis Edwards bought the property in 1899. She answered: “I just don’t know; I don’t just know how it was, just know they was farming it, the negroes were working it and Mr. Wills superintended it. He (meaning her husband) was collecting rents and collecting for groceries. I am positive of that and that is all I can tell you.”
 

 She was asked when that was and said that it was up to the time her husband died. She was asked what she did with the property after her husband died and said that she farmed it a while “and I could not make any success at it and we did not work it for a year or two.” She was asked whether that property is known as the “Dennis Edwards Place.” She answered: “Part of it is; I know that there is an eighty acre tract of Dennis Edwards land,” on which she said he lived.
 

 She testified that her husband collected rents from' Dennis Edwards and said: “Dennis had some, and we had some land all under one fence and they worked it.” She made it clear that Dennis Edwards
 
 *375
 
 cultivated not only his own land hut other land which belonged to her- husband. Therefore, the fact that Dennis Edwards paid rent to Wills does not necessarily show that he was paying rent on what is known as the “Dennis Edwards Place.” She was asked:
 

 “Q. But you know that Dennis Edwards lived on his land and farmed some of your lands? A. Yes, I know that.
 

 “Q. And on the land he farmed of yours he paid rent? A. Yes, I know that.”
 

 This is the only testimony offered by defendants to show that they were in possession of the land at any time prior to the year 1914. From this and the testimony of other witnesses, we doubt that defendants ever had possession of this land prior to 1914. The testimony shows .that the negro Dennis Edwards and his descendants continued to occupy the property as tenants for many years after he sold it to J. L. Ambrose in 1897. But we are convinced' that he was not the tenant of the defendants.
 

 Such record title as defendants may have had was lost by the sale thereof for taxes in 1910.
 

 Their possession subsequent to 1914 was without title, and, even though they possessed as owners subsequent to that date, their possession avails them nothing, because it was for a period of less than 30 years.
 

 The judgment appealed from is correct, and is affirmed at defendants’ costs.
 

 FOURNET, J., absent.